**UNITED STATES of America,**

v.

**Darryl GREEN, et al., Defendants.**

**No. CR. 02–10301–NG.**

United States District Court,
D. Massachusetts.

Dec. 29, 2004.

William C. Brennan, Jr., Brennan, Trainor, Billman & Bennett, LLP, Upper Marlboro, MD, for Darryl Green, Defendant.

Christie M. Charles, George F. Gormley, P.C., Boston, MA, for Jonathan Hart, Defendant.

John H. Cunha, Jr., Cunha & Holcomb, PC, Boston, MA, for Edward Washington, Defendant.

Patricia Garin, Stern, Shapiro, Weissberg & Garin, Boston, MA, for Branden Morris, Defendant.

Randolph M. Gioia, Law Office Of Randolph Gioia, Boston, MA, for Darryl Green, Defendant.

George F. Gormley, Boston, MA, for Jonathan Hart, Defendant.

Theodore B. Heinrich, United States Attorney's Office, Boston, MA, for USA, Plaintiff.

Lori J. Holik, United States Attorney's Office, Boston, MA, for USA, Plaintiff.

David P. Hoose, Katz, Sasson, Hoose & Turnbull, Springfield, MA, for Branden Morris, Defendant.

Sarah Jennings Hunt, Sarah Jennings Hunt, Attorney at Law, Cambridge, MA, for Darryl Green, Defendant.

David J. Huss, Rapid City, SD, for Branden Morris, Defendant.

Wayne R Murphy, Murphy & Flaherty, Boston, MA, for Torrance Green, Defendant.

Melvin Norris, Mel Norris, Wayland, MA, for Branden Morris, Defendant.

Jeffrey B. O'Toole, Washington, DC, for Darryl Green, Defendant.

Pretrial Services, U.S. Pretrial Services, Boston, MA.

Max D. Stern, Stern, Shapiro, Weissberg & Garin, Boston, MA, for Branden Morris, Defendant.

## ADDITIONAL FINDINGS
## RE: BIFURCATION

GERTNER, District Judge.

On November 4, 2004, the Court issued an Amended Memorandum and Order Re: Bifurcation. In that memorandum, I made the following order regarding the trials of Branden Morris and Darryl Green:

I will impanel a jury to decide guilt/innocence and, if necessary, a separate jury to decide penalty. I will 'death-qualify' only the latter jury.

*United States v. Green*, 343 F.Supp.2d 23 (D.Mass.2004).

I based my decision on a number of grounds, which I discussed at some length in the memorandum. I reiterate those findings with additional observations on the impact that my order would have on the government's witnesses and the costs of the proceeding. As I noted:

First, multiple liability proceedings are already required here because of the scope and complexity of the government's indictment—five defendants, a racketeering conspiracy spanning 15 months, antagonistic defenses, co-conspirator's statements.

Second, I noted that it was premature to conclude that there will be a need for a punishment phase at all.

The capital defendants have a substantial defense—whether the Esmond Street Posse is a gang at all, and whether whatever it is meets the requirements of RICO. While many defendants may make similar claims, these defendants have support for their position in Judge Wolf's findings in *Modlin*. *See Green*, 324 F.Supp.2d at 321 n. 16. Moreover, even if Esmond Street were found to be a gang and a racketeering enterprise,

the defendants' submissions suggest that there will be defenses to the claim that the murders at issue were in furtherance of that enterprise, or motivated by some other concern.

*Green*, 343 F.Supp.2d at 32.

Third, I found that death-qualification of the punishment jury would add substantially to the time it takes for the Darryl Green/Hart trial and the Morris/Washington trial, as the government conceded. I indicated that "[i]n a system using separate juries for guilt and penalty phases, time and resources would be saved every time a capital case did not require a penalty phase. It is entirely appropriate for this Court to avoid devoting such substantial resources to jury selection prior to the guilt phase when a 'not guilty' verdict as to the murder count would render death-qualification unnecessary." *Id.* at 33.

Finally, I noted the government's important interest in avoiding the unnecessary repetition of the trauma, fear, and risk associated with testifying for witnesses and victims of the charged violence, and suggested ways of accommodating those interests. *Id.*

I wish to elaborate on the latter findings. This is not a case, as in *United States v. Sampson*, Crim. No. 01–10384–MLW (D.Mass.), where the details of the murder will provide most, if not all, of the grounds for the government's decision to seek the death penalty in the penalty phase. In *Sampson*, for example, the defendant's penalty proceeding focused on the cruelty with which he committed each of the three murders to which he had pled guilty. Had there been a liability phase—had Sampson not pled—the evidence in both phases would have been very similar.

In contrast, from the government's preliminary submissions it appears that in this case the liability and penalty phases will

not necessarily be focused on the same set of facts or witnesses. The government will not recreate the details of the murder of Terrell Gethers, the capital murder at issue in the liability proceedings, in seeking to make its case that Green and Morris are deserving of the death penalty.

The liability phase will address the merits of the allegations—the existence and nature of the enterprise, racketeering acts of the defendants in furtherance of that enterprise, and finally, what happened on the day of Gethers's murder, and its relation to the enterprise.[1]

But the specific details of the murder—how it was done, with what degree of cruelty—are not likely to be the focus of the penalty phase. In the government's Notice of Intent to Seek the Death Penalty [document # 94], it lists the following as the bases for the recommendation of death: a) whether Morris and Green intentionally killed Gethers, and b) whether, by shooting into a crowded area, they created a risk of death to additional people; c) the assault with intent to murder Anthony Vaughan, which is both a racketeering act allegation in the Superceding Indictment (Racketeering Act thirteen) as well as an act listed in the Government's Notice of Intent to Seek the Death Penalty; d) the impact of Gethers's death on his family, and about Gethers's personal characteristics. For Darryl Green, the government also alleges that Green e) "urg[ed] Edward Washington to attempt to murder Richard Green on or about September 16, 2000,"

Notice of Intent to Seek Death Penalty, p. 3, an attempt which occurred before the racketeering acts alleged in the case, and f) that Green's behavior after the murder suggested a lack of remorse. For Morris, the government alleges g) that he participated in the arson murder of Shelby Caddell on or about August 24, 2001. The penalty phase will be about the defendants' character, and other alleged offenses committed by them that are unrelated to the offenses listed in the Superceding Indictment.

On the face of it—and this is all that the Court can see at this point—penalty phase facts a), b) and c) are facts which involve the same proof as at trial, but the remainder, d) through f), involve facts which may well be inadmissible at the liability phase. In any event, to the extent that there is evidence overlap—and it is not likely to be substantial—such overlap can and should be accommodated as I described in the my memorandum of November 4, 2004.

**SO ORDERED.**

---

1. In the Government's Response to Defendants' Motion to Sever at 1–4 [document # 141] and the Superceding Indictment [document # 92], the government suggests that liability will be about the following: that an enterprise—the Esmond Street gang—existed, and the enterprise engaged in racketeering, drug dealing, conspiracy to murder, murder, assault, and the use of a firearm during a crime of violence. More specifically, the government will try to show that Esmond Street engaged in an ongoing violent dispute with a rival gang, the Franklin Hill Giants; Green shot Anthony Vaughan in the back of the head on or around July 3, 2001; Green and Morris shot and killed Terrell Gethers; and during the ongoing gang dispute, a firearm used in furtherance of the conspiracy was seized from Morris on April 16, 2001.